**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X   Case No.
SILVINA KRIJGER,

                            Plaintiff,

            - against -                                                 **COMPLAINT**

CHILDREN OF AMERICA, INC., and                                          **PLAINTIFF DEMANDS**
CHILDREN OF AMERICA (PORT JEFFERSON), LLC,                              **A TRIAL BY JURY**

                            Defendants.

------------------------------------------------------------------------X

        Plaintiff Silvina Krijger, by and through her attorneys NISAR LAW GROUP, P.C.,

hereby complains of Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1.      Plaintiff brings this action against Defendants for failure and refusal to pay Plaintiff her

        earned wages pursuant to the New York State Labor Law, Articles 6 & 19 ("NYLL")

        and/ or for failure and refusal to pay Plaintiff minimum wage owed for work performed

        pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and the

        NYLL.

2.      Plaintiff also brings this whistleblower retaliation action pursuant to New York Labor

        Law § 740, *et. seq.*, and complains that Defendants unlawfully terminated her

        employment after she objected to, and complained about, Defendants' attempt to evade

        the mandatory disclosure requirements of New York Social Services Law § 413.

3.      As a result of Defendants' violations of the law, Plaintiff is entitled to: (a) the full amount

        of non-payment of earned wages, (b) attorneys' fees and costs, (c) prejudgment interest,

        and (d) an additional amount as liquidated damages equal to one hundred percent of the

        total amount of the wages found to be due, as well as damages to redress the injuries she

has suffered as a result of being retaliated against and discharged by Defendants solely on the basis of her status as a whistleblower.

## JURISDICTION AND VENUE

4.      Jurisdiction of this Court is proper under section 216(b) of the FLSA (29 U.S.C. § 216 (b)) and 28 U.S.C. §§ 1331 and 1343.

5.      The Court has supplemental jurisdiction over Plaintiff's claims brought under state law pursuant to 28 U.S.C. § 1367.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as it is a judicial district in which a substantial part of the events or omissions giving rise to the claims have occurred.

## PARTIES

7.      At all times relevant, Plaintiff Silvina Krijger ("Plaintiff") was a resident of the State of New York and Suffolk County.

8.      At all times relevant, Defendant Children of America, Inc. ("Defendant COA") was and is a foreign business corporation, duly existing pursuant to, and by virtue of, the laws of the State of Florida, with its principal place of business located at 5300 West Atlantic Ave., Suite 700, Delray Beach, FL 33484.

9.      At all times relevant, Defendant Children of America Port Jefferson, LLC ("Defendant COA Port Jefferson") was and is a domestic limited liability company, duly existing pursuant to, and by virtue of, the laws of the State of New York, with its principal place of business located at 1661 Rte. 112, Port Jefferson Station, NY 11776.

10.     At all times relevant, and upon information and belief, Defendant COA and Defendant COA Port Jefferson are "integrated employers," as they have common management,

share financial control of both companies, share centralized control of labor relations, and share employees.

11.    Defendant COA and Defendant COA Port Jefferson shall be herein referred to together as "Defendants."

12.    At all times relevant, Plaintiff was an employee of Defendants.

## MATERIAL FACTS

13.    On or about September 2, 2021, Plaintiff began working for Defendants as a Teacher at Defendant COA Port Jefferson's school, earning approximately $19.69/hour.

14.    Throughout her employment, Plaintiff was an overall good employee who routinely received compliments for her work performance.

15.    However, as will be discussed infra, Defendants mandated Plaintiff to work past 6:00 PM ET on workdays yet clocked her out at 6:00 PM ET despite knowing and mandating that she work past 6:00 PM ET. Further, Defendants ultimately terminated Plaintiff's employment because Plaintiff was openly objecting to, and complaining about, child neglect taking place at Defendant COA Port Jefferson's school. These will be addressed, in turn.

### *Unpaid Wages/ Unpaid Minimum Wage*

16.    When Plaintiff initially began working for Defendants, she was advised that her schedule was from 9:00 AM ET to 6:00 PM ET Monday through Friday with a one-hour unpaid lunch break in the afternoon. Accordingly, she was scheduled for, and worked, 40 hours per week.

17.    However, shortly thereafter, Plaintiff was advised by Jim Hansen (Defendant COA Port Jefferson's Director (who was also Plaintiff's boss)) that her schedule was being adjusted

and going forward it would be from 9:30 AM ET to 6:30 PM ET Monday through Friday with a one-hour unpaid lunch break in the afternoon.

18. Accordingly, beginning in or around the week of September 20, 2021, Plaintiff's adjusted scheduled went into effect and she began working from 9:30 AM ET to 6:30 PM ET Monday through Friday.

19. However, with this adjusted schedule a pattern developed which caused Plaintiff to not be paid for work performed.

20. Specifically, Plaintiff would frequently have to stay at work until the last child was picked up (which sometimes wouldn't be until the COA Port Jefferson school closed at 6:30 PM ET), and in any event, even after the last child was picked up, Plaintiff would have to clean up the space (which included tidying up the space, vacuuming, mopping, taking care of the trash, and other such duties) which typically concluded anywhere between 6:00 PM ET and 6:30 PM ET.

21. However, when Plaintiff would go to clock out, she would learn that she had already been clocked out at 6:00 PM ET despite working time beyond 6:00 PM ET.

22. Consequently, Plaintiff addressed this with management (namely with Mr. Hansen) who acknowledged that he was clocking her out at 6:00 PM ET. He responded that "that's the way that it is and if you don't like it, you can go get another job." This conversation (and response) occurred around the end of September/ early October 2021.

23. The situation did not change, and Plaintiff was routinely working past 6:00 PM ET yet being clocked out by Mr. Hansen throughout September and October 2021 at 6:00 PM ET. As such, on October 25, 2021, Plaintiff complained to Alex Mauras (Defendant COA Port Jefferson's Assistant Director), via text message, that she was being short-changed

for time worked. Specifically, she wrote, in relevant part: "this new time staying late doesn't work it's cutting my hours short … What happens is that kids leave and after that I [c]lean (vacuum and mop etc, [t]rash, spray etc) which takes 15 minutes." In that same text string, she explained that upon completing her work past 6:00 PM ET, she goes to clock out and Mr. Hansen had already clocked her out at 6:00 PM ET, and because of this, she's not being paid money owed to her. In that same exchange, she explained that Mr. Hansen doing this is resulting in a loss of $200 per month owed to her.

24.    Unfortunately, Ms. Mauras never meaningfully engaged Plaintiff in light of these texts and the situation went unremedied throughout the entirely of Plaintiff's employment, causing her to suffer unpaid wages/ owed minimum wage.

### *Unlawful Retaliation*

25.    On or about September 22, 2021, Plaintiff informed Mr. Hansen and Ms. Mauras that one of the children, Child LR, was acting very aggressively towards the other children and had even hit Child H. Although Plaintiff was hoping that Defendants would make a formal report to New York Statewide Central Register of Child Abuse & Maltreatment ("SCR"), upon information and belief, this never occurred.

26.    Further, Mr. Hansen and Ms. Mauras discouraged Plaintiff from notifying SCR herself.

27.    On or about October 13, 2021, Plaintiff notified Mr. Hansen that Child LR was still attacking the other children including biting Child MM and Child SS. Unfortunately, Mr. Hansen and Ms. Mauras again refused to address the issue and at least try and determine a solution so that additional children would not get injured. As a result, Child LR continued to attack and hurt his peers.

28.    For example, in or around mid-November 2021, Plaintiff informed Mr. Hansen and Ms.

Mauras that Child LR had just hit and injured another child, Child AW.

29.    Next, on or about Friday, December 10, 2021, after Child LR attacked and hurt Child

JTW, Plaintiff filled out a formal Incident Report in which she stated, "[Child JTW] was

sharing a piano with [Child LR] who suddenly ripped it off his hands and hit him in his

face with it. … The lead teacher left the room to look at her phone in the hallway/

entrance in front of Alex, Assistant Director."

30.    However, when Plaintiff handed Mr. Hansen the Incident Report, he not only refused to

report it to SCR but instead actually threw it away.

31.    One week later, on or about December 17, 2021, since Defendants were still refusing to

take any action to protect the children, Plaintiff felt compelled to personally report this

neglect to SCR via telephone. Specifically, Plaintiff reported to SCR that children were

being injured at Defendants' school and that Defendants were condoning it and allowing

these otherwise avoidable accidents to occur.

32.    Only hours after Plaintiff contacted SCR, also on or about December 17, 2021, SCR sent

an investigator to Defendant COA Port Jefferson's school to investigate Plaintiff's

allegations of child neglect. While Plaintiff was hopeful that Defendants would now

finally address the neglect of the children, she never expected to be retaliated against and

terminated. Unfortunately, this is precisely what occurred.

33.    To this end, on or about Monday, December 20, 2021, Defendants suddenly suspended

Plaintiff's employment pending its investigation into the allegations of neglect.

34.    On or about Wednesday, December 22, 2021, Ms. Corrie-Lynn Garrison (Defendants'

Executive Director) sent Plaintiff an email "setting up a call for Monday 12/27/2021 at

11:00am to review your concerns and our findings. You are not to return to the location

as we have to have our meeting with you prior to the next steps. … The no contact with employees, families or the school still is in standing at this point."

35.   On or about the following Monday, December 27, 2021, Ms. Garrison notified Plaintiff during their meeting that while Defendants found no evidence of any neglect, Ms. Garrison nonetheless gave Plaintiff the option of transferring to Defendant COA's Smithtown, New York location, which Plaintiff accepted.

36.   When the meeting ended, Ms. Garrison handed Plaintiff a print-out instructing her not to talk to anyone at Defendant COA's Smithtown location about what occurred at Defendant COA Port Jefferson's school.

37.   Two days later, on or about Wednesday, December 29, 2021, Plaintiff reported to Defendant COA's Smithtown location as directed. However, when she arrived, the Director of the Smithtown location claimed to have no idea who Plaintiff was. In response, Plaintiff immediately showed the Director the bottom of the print-out which stated, "Corrie Garrison will speak with the Director at Smithtown and set up transfer to be in effect for Wednesday 12/29/2021. [Plaintiff] will report to Smithtown on 12/29/2021 at same time scheduled at previous location." Plaintiff was mindful of Ms. Garrison's directive regarding keeping secrecy relating to what occurred at the Port Jefferson location and ensured that she showed Ms. Garrison only the portion relating to Plaintiff's transfer. The Director was nevertheless confused and sent Plaintiff home.

38.   Later that same day, also on or about Wednesday, December 29, 2021, without any warning, Defendants suddenly terminated Plaintiff's employment purportedly because "part of the transfer agreement was that the investigation from [your] prior location is not discussed with any employee at the Smithtown location" and "on 12/29/2021 [you]

7

arrived and disclosed information from the investigation and even shared the letter with [your] new Director."

39.     This reason for termination was clearly pretextual, as Plaintiff neither discussed the investigation with, nor disclosed any information from any investigation to, anyone at Defendant COA's Smithtown location.

40.     In fact, the following day, Plaintiff sent Ms. Garrison an email to let her know that "This is the portion of the letter I showed her. … I did not discuss nothing with no one." Ms. Garrison never responded to Plaintiff's email.

41.     Based on the foregoing, on December 29, 2021, Defendants violated NYLL § 740 when they terminated Plaintiff's employment in retaliation for her objections to not only the child neglect but to Defendants' refusal to report the child neglect to SCR, as well as making a report herself to SCR. As such, Plaintiff was terminated and punished for speaking out against child neglect both internally as well as to SCR.

42.     Plaintiff observed Mr. Hansen and Ms. Mauras permit and allow Child LR to injure other children without any intervention. Since Plaintiff considered this to be a form of child neglect, she sought to report this abuse, consistent with her legal obligations as a mandated reporter pursuant to Social Services Law § 413.[1] Defendants' willful failure to comply with § 413's reporting requirement "creates and presents a substantial and specific danger to the public health or safety" because it permits child neglect to go unchecked.

---

[1] New York Social Services Law § 413 requires, a "school official, which includes but is not limited to ... school teacher [and] school administrator" to "report or cause a report to be made ... when they have reasonable cause to suspect that a child coming before them in their professional or official capacity is an abused or maltreated child, or when they have reasonable cause to suspect that a child is an abused or maltreated child where the parent, guardian, custodian or other person legally responsible for such child comes before them in their professional or official capacity and states from personal knowledge facts, conditions or circumstances which, if correct, would render the child an abused or maltreated child[.]" Social Services Law § 413.

43.    Defendants clearly did not like the fact that Plaintiff had complained about Defendants'
       violations of law related to their reporting requirements and ultimately terminated her
       employment as a result.

44.    But for the fact that Plaintiff had objected to Defendants' safety violations, Defendants
       would not have terminated her employment.

45.    Upon information and belief, Defendants' actions were done maliciously and/or in
       reckless disregard for Plaintiff's civil rights.

46.    Upon information and belief, Defendants' actions and conduct were intentional and intended
       to harm Plaintiff.

47.    As a result of the acts and conduct complained of herein, Plaintiff has suffered a loss of
       income, the loss of earned wages, benefits, and other compensation which such
       employment entails, and Plaintiff has also suffered future pecuniary losses.

48.    As a result of the above, Plaintiff has been damaged in an amount which exceeds the
       jurisdiction limits of the Court.

## JURY DEMAND

49.    Plaintiff demands a trial by jury.

## AS A FIRST CAUSE OF ACTION
## VIOLATION OF THE NEW YORK LABOR LAW
## FAILURE TO PAY EARNED WAGES

50.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of
       this complaint as if same were set forth herein fully at length.

51.    Defendants failed and refused to pay Plaintiff her earned wages "not less frequently than
       semi-monthly, on regular pay days designated in advance by the employer," in violation
       of NYLL § 191(1)(d).

52.     Pursuant to NYLL § 191(2), "No employee shall be required as a condition of employment to accept wages at periods other than as provided in this section."

53.     No employer shall make any deduction from the wages of an employee, except under very specific circumstances. NYLL 193.

54.     There is no exception to liability under the NYLL for the unauthorized failure to pay wages, benefits or wage supplements. See NYLL §§ 193(5), 198(3).

55.     As a consequence, under NYLL § 198, Plaintiff is entitled to (a) the full amount of underpayment, (b) attorneys' fees and costs, (c) prejudgment interest, and (d) an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due.

**AS A SECOND CAUSE OF ACTION**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT**
**<u>MINIMUM WAGE</u>**

56.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

57.     Defendants have willfully employed Plaintiff in the aforementioned enterprise and have failed to compensate Plaintiff at the required minimum hourly rate for her employment.

58.     Defendants' failure to pay Plaintiff the mandated minimum hourly pay in accordance with the FLSA was and is a direct violation of the FLSA, specifically 29 U.S.C. § 206.

59.     Defendants' failure to pay proper minimum wages for each hour worked was and is willful within the meaning of 29 U.S.C. § 255.

60.     Defendants' failure to comply with the FLSA has caused Plaintiff to suffer loss of wages.

**AS A THIRD CAUSE OF ACTION**
**VIOLATION OF NEW YORK LABOR LAW § 652(1)**
**MINIMUM WAGE**

61.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint as if same were set forth herein fully at length.

62.     Plaintiff was an employee of Defendants within the meaning of the NYLL.

63.     Defendants failed to pay Plaintiff the required minimum hourly wage rate for one hour of

work.

64.     Defendants violated Plaintiff's right to minimum wage pay under NYLL § 652(1); New

York Labor Law, Article 19.

65.     Defendants also violated New York's Minimum Wage Order of 12 NYCRR Part No.

142.

66.     Defendants' actions were and are willful.

67.     Due to Defendants' NYLL violations, Plaintiff is entitled to recover from Defendants her

unpaid minimum wage in an amount to be determined at trial, plus an amount equal to

100% of Plaintiff's unpaid wages in the form of liquidated damages, as well as attorneys'

fees and costs of the action, including pre- and post- judgment interest, pursuant to NYLL

§§ 198 and 663(1).

**AS A FOURTH CAUSE OF ACTION**
**NEW YORK LABOR LAW § 740**

68.     Plaintiff hereby repeats and realleges each allegation contained herein in all above

paragraphs number as if more fully set forth herein.

69.     Pursuant to New York State's Labor Law § 740 entitled, "Retaliatory personnel action by

employers; prohibition" states in pertinent part as follows:

2. Prohibitions. An employer shall not take any retaliatory personnel action against an

employee because such employee does any of the following:

(a) discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety, or which constitutes health care fraud;

(b) provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any such violation of a law, rule or regulation by such employer; or

(c) objects to, or refuses to participate in any such activity, policy or practice in violation of a law, rule or regulation.

4. Violation; remedy.

(a) An employee who has been the subject of a retaliatory personnel action in violation of this section may institute a civil action in a court of competent jurisdiction for relief as set forth in subdivision five of this section within one year after the alleged retaliatory personnel action was taken.

70. Defendants' attempt to discourage Plaintiff from complying with her disclosure obligation under Social Services Law § 413 evidences "an activity, policy or practice ... that is in violation of law" within the meaning of Labor Law § 740.

71. By reporting the alleged neglect to SCR, Plaintiff "object[ed] to, or refuse[d] to participate in" Defendants' attempt to evade the mandatory disclosure requirements of Social Services Law § 413.

72. Defendants' willful failure to comply with § 413's reporting requirement "creates and presents a substantial and specific danger to the public health or safety" because it permits child neglect to go unchecked.

73. Plaintiff was subsequently terminated as a result of her complaint to SCR.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A.   Declaring that Defendants engaged in unlawful employment practices prohibited by the FLSA and the NYLL by failing to pay Plaintiff her earned wages and/or minimum wage;

B.      Declaring that Defendants violated the NYLL when they failed to pay Plaintiff at the

        agreed-upon rate;

C.      Declaring that Defendants violated the NYLL by making unlawful deductions from the

        money lawfully earned by Plaintiff for work performed;

D.      Declaring that Defendants engaged in unlawful employment practices prohibited by New

        York State's Labor Law §740 *et. seq.* in that Defendants unlawfully retaliated against

        Plaintiff and terminated her employment;

E.      Awarding damages to Plaintiff for all unpaid wages due under the FLSA and NYLL;

F.      Awarding Plaintiff liquidated damages and interest as a result of Defendants' willful

        failure to pay wages;

G.      Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants'

        unlawful termination of employment and to otherwise make her whole for any losses

        incurred and damages sustained as a result of all other unlawful employment practices

        herein complained of;

H.      Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the

        action; and

I.      Awarding Plaintiff such other and further relief as the Court may deem equitable, just and

        proper to remedy Defendants' unlawful employment practices.

Dated: New York, New York
       October 28, 2022

                                                        **NISAR LAW GROUP, P.C.**


                                        By:     _____
                                                Casey Wolnowski, Esq.
                                                *Attorneys for Plaintiff*
                                                One Grand Central Place

60 East 42nd Street, Suite 4600
New York, New York 10165
Ph: (646) 889-1007
Email:cwolnowski@nisarlaw.com